# Document Verification

| | |
|---|---|
| **Case Title:** | De La Rosa v. USA |
| **Case Number:** | 03cv00599   cr 01-1478 JP |
| **Office:** | |

## Document Information

**Number:** 18

**Description:** MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION following an evidentiary hearing recommending movant's 2255 motion be dismissed w/prejudice (cc: all counsel*)

**Size:** 15 pages (61k)

**Date Received:** 10/20/2004 10:43:56 AM    **Date Filed:** 10/20/2004    **Date Entered On Docket:** 10/20/2004

## Court Digital Signature    [ View History ]

8f d4 bf 8f 76 93 65 47 29 22 66 80 8d 86 0e fd ad ef 80 a7 49 e9 ff bb cd d0 c1 07 56 77 c3 51 f7 b2
ed 93 62 9e b6 83 4c 13 66 80 4a aa 86 80 2a 58 fb 7b a5 44 a2 9c 5a c6 5d d9 15 e0 4e 77 a6 63 21 ce
43 b6 50 c0 36 50 14 ac 1b 77 0d 82 cb d0 6a a7 5a 69 b3 61 f3 ad 39 20 cf d0 2a 5e 7a 34 9c b2 8a 5c
6c f3 99 c4 14 7a 3c 13 0c 5c 44 cd 9d 7c 8c 8d e2 19 d8 45 c4 4c 97 84 f6 24

## Filer Information

**Submitted By:** Cathy F Alvarez

**Comments:** RECOMMENDED FINDING by Magistrate Judge Lourdes A. Martinez Proposed Findings and Recommended Disposition Following Evidentiary Hearing

**Digital Signature:** The Court's digital signature is a verifiable mathematical computation unique to this document and the Court's private encryption key. This signature assures that any change to the document can be detected.

**Verification:** This form is verification of the status of the document identified above as of *Wednesday, October 20, 2004*. If this form is attached to the document identified above, it serves as an endorsed copy of the document.

**Note:** Any date shown above is current as of the date of this verification. Users are urged to review the official court docket for a specific event to confirm information, such as entered on docket date for purposes of appeal. Any element of information on this form, except for the digital signature and the received date, is subject to change as changes may be entered on the Court's official docket.



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

v.

CIV 03-599 MCA/LAM
CR 01-1478 JP

JOE DE LA ROSA,

Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## FOLLOWING EVIDENTIARY HEARING

THIS MATTER was referred to me following an evidentiary hearing held by Magistrate Judge Karen Molzen regarding the ineffective assistance of counsel claims that Petitioner Joe De La Rosa raises in his "Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody." *Doc. 1* (hereinafter "§ *2255 Petition*").[1] Having reviewed the record and for the reasons stated below, I find that it is unnecessary for me to hold a second evidentiary hearing and recommend that the petition be dismissed.

### I. Factual & Procedural Background

While under the influence of medication prescribed for back pain, Defendant robbed a bank by knife point. However, soon thereafter he turned himself in and confessed to the crime. Originally

---

[1] The preprinted form Defendant used is entitled a "petition" but designates him as a "movant." For ease of reference, I refer to the initial pleading as a "2255 petition," as is commonly done. *E.g., United States v. Gonzales*, 98 Fed. Appx. 825, 828 (10th Cir. 2004) ("petitioner" may bring ineffectiveness claim in "2255 petition"); *United States v. Keebler*, 49 Fed. Appx. 267, 269 (10th Cir. 2002) ("Under § 2255, a petitioner generally must file a petition within one year . . . . Mr. Keebler's time to file his § 2255 petition").

represented by the Federal Public Defender, he rejected a plea agreement but did eventually plead guilty to a one-count information charging him with armed bank robbery.

After pleading guilty, another attorney represented Defendant at sentencing. At the May 22, 2002 sentencing hearing, Defendant requested District Judge Armijo to grant him a downward departure for "extraordinary acceptance" of responsibility. Judge Armijo denied the request and sentenced Defendant to the low end of the Federal Sentencing Guideline range identified in the presentence report.[2] Judgment was entered accordingly on June 11, 2002.

Defendant did not attempt to appeal his sentence at any time. Rather, approximately a year later, and on the eve of the one-year anniversary of the sentencing hearing, Defendant filed his § 2255 petition. *See § 2255 Petition* (attached "Memorandum Of Law In Support Of Motion To Vacate Set Aside Or Correct Sentence Pursuant To Title 28 Section 2255" [hereinafter *"Petition Memorandum"*] at 2, specifically noting applicable one-year limitations period and using sentencing hearing date as benchmark).

Defendant raises two interrelated claims in the body of his petition. First, he claims that Judge Armijo erred in refusing to grant him a downward departure when the facts warranted the departure, *Petition Memorandum* at 3, and she "erroneously believed [she was] without authority to consider a departure based on the factors present in his case," *id.* at 5. Second, he claims that he "requested counsel to file an appeal and make the issue about not receiving 'extra ordinary [*sic*] acceptance of responsibility' for his voluntary surrender and confession to police." *Id.* at 6. In a footnote, he

---

[2] "I will adopt the presentence report factual findings and the guideline applications. ... offense level ... is 23, and the criminal history category is three. The guideline imprisonment range is 57 to 71 months. ... I'm going to give you the low end of the guideline -- for a term of 57 months." *Sentencing Transcript*, at 15-16.

2

asserts that counsel also failed (a) to object to the four-level enhancement he received for use of a dangerous weapon and (b) to argue that it should have been a three-level adjustment instead. *Id.* at 3, n.2.

In its Response to Defendant's § 2255 petition, the United States submitted an affidavit from Defendant's sentencing counsel that stated in pertinent part, "[t]o the best of my memory, my client, Mr. De La Rosa did not ask me to file an appeal during or after the sentencing hearing in the above referenced matter" and "[h]ad Mr. De La Rosa asked me to file an appeal in relation to that case, I would have filed such [an] appeal." *United States' Response To Motion To Vacate, Set Aside Or Correct Sentence Pursuant To Title 28 U.S.C. § 2255 (Doc. 6)* (attached "Affidavit Of Anthony White" at ¶¶ 4-5). In reply, Defendant further asserted that his attorney "did not consult with [him] during or after the sentencing hearing to file a notice of appeal." *Response To The Government's Response To Movant's § 2255 Motion (Doc. 9)* at 4.

Magistrate Judge Molzen initially recommended dismissing the petition on the merits because (a) Judge Armijo recognized that she had the authority to depart, but chose not to do so, and therefore an appeal would have been unavailing, and (b) even if Defendant had been given a three-level adjustment instead of a four-level adjustment, the sentencing range would have been 51 to 63 months and his sentence fell within the middle of that range. *Proposed Findings And Recommended Disposition (Doc. 10)* at 3-4 (hereinafter "*KBM Proposed Findings*"). Consequently, Defendant could not establish the prejudice prong of the *Strickland v. Washington*, 46 U.S. 668 (1984) test for ineffective assistance of counsel claims. *See id.* at 2-4.

District Judge Parker rejected the proposed disposition because *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) and *United States v. Snitz*, 342 F.3d 1154 (10th Cir. 2003), reject a solely merits-

3

based test for prejudice if counsel disregards express instructions to perfect an appeal. *Order Rejecting Magistrate Judge's Proposed Disposition And Appointing Counsel From CJA Panel And Reassigning Matter To Judge Armijo (Doc. 12)* at 2-3. He further observed that facts were not sufficiently developed to apply the applicable law. *See id.* at 2.

Accordingly, Judge Parker appointed new counsel to represent Defendant in the *habeas* proceedings, the *habeas* matter was assigned to the sentencing judge, Judge Armijo, and Judge Molzen held an evidentiary hearing on the issues. *See id.* at 4-5; *see also CJA 20 Appointment Of And Authority To Pay Appointed Counsel (Doc. 13)* (entry of appearance of Leonard J. Foster); *Clerk's Minutes (Doc. 16)* (for evidentiary hearing held June 8, 2004). During the evidentiary hearing, Judge Molzen determined that she should recuse, and the matter was then referred to me. *See Minute Order (Doc. 17)* (assigning case to Magistrate Judge Martinez).

## II. Analysis

### A. Procedural Default And Cognizability Of Downward Departure Claim

Judge Molzen's proposed findings addressed the United States' argument that Defendant procedurally defaulted his downward departure claim because he failed to raise it on direct appeal. I note that the United States must raise the default issue in order to preserve it, but that, in failing to object to Judge Molzen's finding, it potentially waived the issue. Nevertheless, because Judge Molzen's proposed findings were rejected, I believe that the United States' original procedural default argument is again before me.

I agree with Judge Molzen that Defendant's downward departure claim is not procedurally-defaulted because he failed to raise it on direct appeal. Defendant not only raises the departure issue as an independent basis for *habeas* relief, he also raises it as the basis for an ineffective assistance of

4

counsel claim. And, ineffective-counsel claims are not defaulted for failure to raise them on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."); *see also KBM Proposed Findings* at 2. Furthermore, ineffective assistance of counsel can constitute cause for a procedural default. *E.g., United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003).

The United States also asserts that a *habeas* claim challenging the sentencing judge's decision not to depart downward is not cognizable in *habeas corpus* because § 2255 is only available to correct errors of constitutional dimension. And, the United States is correct that there is authority for this proposition.[3]

---

[3] In *Piervinanzi v. United States*, 151 F. Supp. 2d 266, 271 (S.D.N.Y 2001), for example, the district judge cited decisions from the 2nd, 4th, and 7th Circuits for the proposition that only errors of constitutional magnitude will support relief under § 2255 and held that because he was aware of his authority to depart downward but chose not to do so, the defendant's claim that his decision was erroneous was not cognizable under § 2255.

The Tenth Circuit precedent is in accord with the proposition that only errors of constitutional magnitude support *habeas* relief, but it has not definitively decided whether or under what circumstances claims of error in downward departure motions are cognizable under § 2255.

> Talk asserts that he is entitled to relief under 28 U.S.C. § 2255 because his sentence [where downward departure was denied] was imposed in violation of the laws of the United States. But not every violation of a statute can be remedied by motion under § 2255. Rather, such error will only be cognizable when it qualifies as a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure. . . . A nonconstitutional, nonjurisdictional error must present exceptional circumstances where the need for the remedy afforded by the writ of *habeas* corpus is apparent. . . . This heightened showing applies because there is no basis . . . for allowing collateral attack to do service for an appeal.

(continued...)

However, if the downward departure argument were to succeed as the basis for an ineffective-counsel claim, then the *habeas* relief to which Defendant would be entitled is to allow him to take an appeal and raise the downward departure issue before the Tenth Circuit. As such, it would appear to be inappropriate for this Court to decide whether *habeas* relief should issue based on the "independent" downward departure claim. Therefore, any further discussion of the merits of the downward departure argument is undertaken solely for the purpose of analyzing the ineffective-counsel claim.

### B. Ineffective Assistance of Counsel

The two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), generally governs Defendant's ineffective assistance of counsel claims. That is, he bears the burden of showing that counsel's conduct was objectively unreasonable and that this deficient conduct resulted in prejudice. *See, e.g., Flores-Ortega*, 528 U.S. at 476-77. At the evidentiary hearing, counsel argued that the Guidelines calculation regarding "use" vs. "brandishment" and downward departure issues should have been explored on appeal, but were not because counsel was ineffective for failing to file an appeal. *See Evidentiary Hearing Transcript* at 44-46.

---

(...continued)
   ... Because we ultimately conclude that Talk cannot substantiate the error he alleges, there is no need to resolve conclusively whether such error is actionable by means of a § 2255 petition.

*United States v. Talk*, 158 F.3d at 1064, 1069-70 (10th Cir. 1998) (internal quotations and citations omitted, and abrogated on other grounds, *see United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004)), *cert. denied*, 525 U.S. 1164 (1999); *see also, e.g. United States v. Boman*, 25 Fed. Appx. 761, 762 (10th Cir. 2001) ("It is doubtful that a post-sentencing clarifying [Guideline] amendment is a ground for collateral relief under § 2255. Two of our sister circuits have [so] held;" citing decisions from 6th and 11th Circuits and, as analogous, the 10th Circuit's decision in *Talk*).

6

### 1. Defendant Presents A "Consultation" Case, Not An "Express Instruction" Case

The Supreme Court's decision in *Flores-Ortega* and the Tenth Circuit's decision in *Snitz* further refine the *Strickland* test in the context of a claim that counsel was ineffective for failing to file an appeal. Taken together, those decisions provide that this Court must first answer whether Defendant gave his attorney specific instructions to perfect an appeal. If he did, then the inquiry ends because both prongs of the *Strickland* test are satisfied, and the appropriate *habeas* remedy is to allow Defendant to perfect his appeal. *See Snitz*, 342 F.3d at 1156, 1159. However, contrary to what was arguably suggested by Defendant's *pro se* pleadings and counsel's affidavit, this is not an "express instruction" case.

The testimony of Defendant and his attorney at the evidentiary hearing is consistent on this point. Defendant had rejected a plea agreement because he wanted to seek a downward departure at sentencing based on his perceived "extraordinary remorse" and defense counsel was aware of his client's desire. *See Evidentiary Hearing Transcript* at 11-12. After Judge Armijo pronounced sentence and specifically advised Defendant of his right to appeal, while still at the podium, Defendant asked either, "Can I appeal this?" or "Can I appeal?" *See id.* at 20, 33. After a short conversation, Defendant and his attorney had no further contact, and Defendant never instructed his attorney to file an appeal. *Id.* at 20-21; 33-34.. Rather than an explicit and specific instruction to file an appeal, I find that Defendant's question established only that "this particular defendant reasonably demonstrated to counsel that he was *interested* in appealing." *Flores-Ortega*, 528 U.S. at 480 (emphasis added).

### 2. Objective Reasonableness Of Conduct Re: "Consultation"

Since Defendant demonstrated an interest in appealing, under *Flores-Ortega* his attorney thus had a "constitutionally imposed duty to consult with [Defendant] about an appeal." *Id.* In this context, the Supreme Court "employ[s] the term 'consult' to convey a specific meaning – advising

7

that defendant about the advantages and disadvantages of taking an appeal, ***and*** making a reasonable effort to discover the defendant's wishes." *Id.* at 478 (emphasis added). If an attorney discharges the constitutional duty to consult, then counsel's performance is only unreasonable within the meaning of *Strickland* if counsel fails "to follow the defendant's express instructions with respect to an appeal." *Id.*

Because Defendant and his attorney had a brief conversation after Defendant posed the question, the first prong of the *Strickland* test turns on whether the substance of that conversation satisfies the Supreme Court's definition of "consult." Neither the *Flores-Ortega* nor *Snitz* had occasion to discuss what circumstances establish that an attorney's conduct in "consulting" was deficient. To-date, I have not found any subsequent Supreme Court or Tenth Circuit authority on the subject. Moreover, I did not preside over the evidentiary hearing, so I am not in a position to make credibility determinations.

Nonetheless, even if I credit both Defendant's and the attorney's version of their conversation, the result is the same. Defendant's attorney testified that their conversation consisted of the following:

> Mr. De LaRosa was interested in the appeal part of [Judge Armijo's] colloquy. As we were standing at the podium, he looked at me and said, "Can I appeal this?" in my recollection, anyway. And I said something to the effect of, "Yeah, you can always appeal this, but you're not going to get anywhere with this. This is a discretionary act on the judge's part, and it's really hard to get these overturned." I said, "I want you to go think about it and get back in touch with me. Call me on the telephone if you really want to do that, but don't think you're going to get anywhere."

*Evidentiary Hearing Transcript* at 20.

8

Defendant testified that he asked, "can I appeal?" and his attorney's "answer to [him] was direct, 'No.' And that's when I walked off." *Id.* at 33. Defendant never followed up with his attorney because

> "no" is "no." I felt he told me straight up "no." He's my -- he tells me how it goes, you know. If he said "no," then it's "no." He's my -- he's my -- my man at bat, you know. He's the one that swings for me, you know. I figured, he told me "no," it's "no." He is the one with the knowledge. That was my feeling.

*Id.* at 36.

I have found three cases that address the precise issue before me and all of them indicate that a conversation of the sort that occurred here constitutes deficient conduct, even assuming that the conversation was as the attorney testified. Conversely, I have not found a decision that holds this sort of conversation satisfies the duty to "consult."

In the most analogous case, for example, the District of New Jersey held that:

> [b]y all accounts, Petitioner had only one conversation with his trial attorney regarding the issue of an appeal. According to Petitioner, this conversation was initiated when, after being instructed by this Court regarding his right to appeal, he asked his attorney to "put in an appeal for me." . . . [I]t appears that counsel's response to this inquiry was limited to the expression of counsel's belief in the weakness of the appealable issues in Petitioner's case. Such a conversation, in a case such as this, does not constitute "consultation" within the meaning of *Flores-Ortega*. . . . Petitioner's trial attorney conceded that, despite the likelihood that it would be unsuccessful, there were in reality very few disadvantages to the filing of an appeal, as Petitioner was indigent and there would therefore be no financial burden on Petitioner during that process. In such a case, *counsel's emphasis on the merits (or lack thereof) of Petitioner's appeal would seem to be nothing more than an attempt to dissuade Petitioner from pursuing an appeal and is therefore inconsistent with the Supreme Court's recognition that "consultation" includes an objective presentation of both the advantages and disadvantages of filing an appeal* and the fundamental principle that the decision to appeal "rests with the defendant." . . .

9

> Further, and more importantly, the record reveals that Petitioner's attorney did not make a reasonable effort to discover Petitioner's wishes regarding the filing of an appeal. . . . Petitioner never expressly instructed him not to pursue an appeal and [the attorney] never specifically inquired, during that conversation or at any other time, whether Petitioner had made a final decision regarding the filing of an appeal. In a situation such as this, *where a defendant indicates his general desire for an appeal and never expressly states otherwise, and attorney does not meet his obligation to make a reasonable effort to discover his client's wishes where he neglects to take any affirmative action to determine his client's intentions prior to the expiration of the period in which a notice of appeal may be filed.*

*Valletto v. United States*, 195 F. Supp. 2d 643, 645-46 (D.N.J. 2002) (emphasis added).[4]

Arguably, then, counsel's conduct here was likewise deficient, given the undisputed testimony by both Defendant and his attorney that Defendant asked if he could appeal the sentence. *Evidentiary Hearing Transcript* at 20, 33. Such an inquiry ordinarily indicates an interest in finding out if the sentence is appealable. Under these circumstances, Defendant's counsel was arguably under an obligation to consult with Defendant in more detail regarding his appeal rights. The brief conversation counsel had with his client in my view does not satisfy the requirements that counsel (a) advise a defendant of the advantages and disadvantages of taking an appeal, *or* (b) make a reasonable effort to discover the defendant's wishes. Accordingly, if counsel's conduct was legally insufficient or if I assume *arguendo* that it was deficient, then Defendant has sustained his burden on the first prong of the *Strickland* test. That assumption does not end the inquiry, however.

---

[4] Two other decisions that are more factually distinguishable nonetheless stand for the proposition that merely informing a client that there are no grounds to appeal and/or failing to follow up in the ten-day period to ascertain what the client wants to do will not satisfy the "consultation" requirement. *See Lewis v. Johnson*, 359 F.3d 646, 659 n. 13, 660-661 (3rd Cir. 2004); *Miller v. United States*, 150 F. Supp. 2d 871, 879-80 (E.D.N.C. 2001), *aff'd*, 27 Fed. Appx. 165 (4th Cir. 2001) (where only *Apprendi* issue presented on appeal), *cert. denied*, 535 U.S. 1086 (2002).

### 3. Prejudice

Under *Flores-Ortega*, if the attorney's failure concerns the duty to consult, then prejudice is not presumed like it is in the situation where counsel fails to perfect an appeal contrary to the client's express instruction to do so. Instead, Defendant has the burden of demonstrating "prejudice" in the consultation situation. 528 U.S. at 484. That is, "a ***defendant must demonstrate*** that there is a ***reasonable probability*** that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484 (emphasis added). The test is thus an ***objective test.*** The Supreme Court specifically noted that simply because a defendant has "sufficiently demonstrated to counsel his interest in an appeal," it will not necessarily suffice – "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* at 486. Having carefully reviewed the record and transcripts, I find that the ***only*** evidence concerning the prejudice prong before me is the evidence that Defendant demonstrated an ***interest*** in an appeal at the conclusion of his sentencing hearing.[5]

---

[5] Defendant pleaded guilty to the information rather than accepting a written plea agreement that was first offered to him. At the guilty plea hearing, his first attorney mentioned that the plea agreement was rejected because it "was for acceptance of responsibility, which he's accepting by pleading without the plea agreement." *Plea Transcript* at 11. When Judge Molzen inquired that she believed there was a further stipulation in the offer, Defendant's attorney replied that the stipulation was for "low end of the Guidelines; there were no further -- he would have to give up his right to appeal after that. We will be able to make our arguments without the plea agreement." *Id.*

I do not find this passing reference to "appeal" indicating that Plaintiff and his first attorney consulted about an appeal, much less that any "appeal" strategy was discussed with his second attorney prior to the conclusion of the sentencing hearing. First, the testimony at the hearing established that the general practice here is that plea agreements usually contain a provision that bars the defendant from requesting a downward departure. *See Evidentiary Hearing Transcript* at 23-24. Furthermore, none of Plaintiff's written submissions or his testimony indicate that appeal was discussed prior to the conclusion of the sentencing hearing. To the contrary, Defendant and his attorneys discussed sentencing strategy. Finally, even if Plaintiff and his first attorney rejected a plea that contained an appeal waiver section, there is no evidence of record to conclusively establish that Defendant's second attorney was aware of any such discussion or strategy, or precisely why the plea agreement was rejected. *See id.* at 9-14, 23-24, 28-32.

11

Under the express direction in *Flores-Ortega*, Defendant thus has not sustained his burden on the prejudice prong.

Moreover, while *Flores-Ortega* does not impose as a necessary precondition to establishing prejudice that a defendant specify what he would have raised on appeal, "whether a given defendant has made the requisite showing [of prejudice] ***will turn on the facts*** of a particular case [and] ***evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant*** in making this determination." *Id.* at 485 (emphasis added). Under the particular facts of this case, I find that lack of merit as to Defendant's appeal issues and Defendant's inaction following the podium conversation are highly relevant to my inquiry. Either factor alone or in combination defeats Defendant's claim for *habeas* relief.

For example, nowhere in the record is there evidence that Defendant attempted to appeal at any time, belatedly or timely, through communication with his attorney, or *pro se*. Rather, he did not question counsel's failure to perfect an appeal until he filed the instant petition. Likewise, nowhere in his *pro se* submissions or in the testimony from the evidentiary hearing does Defendant assert that he would have appealed if he had further consultation with his attorney. But even if it would be improper to consider Defendant's inaction as a factor weighing against him, the other evidence in the record alone supports the conclusion that he has not sustained his burden of demonstrating a reasonable probability that but for the deficient "consultation" he would have appealed.

I find that Defendant has not sustained his burden of demonstrating that it is reasonably likely he would have insisted that his attorney perfect an appeal. Because of the circumstances surrounding his plea, where his guilt was not in question and the sole tactic was to secure the very best possible sentence for him, the only conceivable issues for appeal were sentencing issues. Defendant has

identified the only conceivable issues for an appeal, and his *habeas* attorney did not argue otherwise. For the reasons set forth below, given those two issues – downward departure and "brandishing vs. use" – more detailed advice from his trial attorney after sentencing would have revealed that (a) it is highly unlikely the Tenth Circuit would take jurisdiction over the downward departure issue, (b) if it did take jurisdiction, there is no merit to the issue, and (c) the "brandishing vs. use" issue did not prejudice him in any way because his sentence was within the Guideline range even if he had been assessed one less enhancement point.

Again, the United States is correct that Defendant presents no basis for finding that Judge Armijo erred in her decision. As the Tenth Circuit held under similar circumstances, an appellate court only has jurisdiction to review a decision not to depart downward from the sentencing guidelines:

> in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant. . . . This exception does **not** apply when a sentencing court concludes under the defendant's particular circumstances that it does not have the authority to depart.

*United States v. Sanchez-Dominguez*, 17 Fed. Appx. 895, 897 (10th Cir. 2001)) (internal quotations and citations omitted and emphasis added).

Here, Judge Armijo recognized that she had the authority to grant a downward departure based on extraordinary acceptance but elected not to do so. *See Sentencing Transcript* at 14-15 ("I do not find that the remorse that he has displayed here today through his letters, other matters brought to my attention, for purposes of your request, is present or exists to such an extent or to such an *exceptional degree* as to take this case out of the heartland of ordinary cases.") (emphasis added). Simply put, there being no basis to appeal her decision, there is no basis for finding it erroneous, much less an error of constitutional dimension.

13

Also, Defendant asserted in various footnotes throughout his *pro se* pleadings that he should not have received a four-level enhancement for use of a dangerous weapon, and should only have received a three-level enhancement for "brandishing" his knife. He asserts that failure to raise this issue amounts to ineffective assistance. As Judge Molzen previously found, however, "Defendant maintains that the base level under the Guidelines should have been a level 25 rather than a level 26. . . . Yet even if the base level was 25, it would not have affected the sentence he received. Starting with a base level of 25, minus 3 levels for acceptance, and a criminal history category of III, the sentencing range would have been 51-63 months, and his fifty-seven month sentence is within that range." *KBM Proposed Findings* at 4.[6]

For all of these reasons, I find that Defendant has not sustained his burden of showing that but for counsel's "deficient" conduct, he would have appealed. *E.g., United States v. Crowell*, 15 Fed. Appx. 709, 712-13 (10th Cir. 2001) (where counsel provided defendant by letter of his right to appeal and how to do so himself, defendant failed to sustain burden on prejudice prong where there was no evidence he attempted to contact his attorney or the court, and even after obtaining § 2255 forms he waited ten years before filing the petition); *see also Sarroca v. United States*, 250 F.3d 785,

---

[6] Although Defendant has not sought to amend his petition to raise an issue under *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004), concerning the enhancement, I am aware that *Blakely* was decided after the evidentiary hearing in this case and that courts are presently dealing with the aftermath of the ruling. In *Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519 (2004), an opinion handed down the same day as *Blakely*, Justice Scalia, also writing for the majority in that opinion, held *Ring* does not apply retroactively. Because the Tenth Circuit held that both *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002) do not apply retroactively for cases pending on collateral review, I agree with the logic that if *Apprendi* does not apply retroactively, then the subsequent Supreme Court cases based on the *Apprendi* analysis, such as *Blakely*, also do not apply retroactively. *See, e.g., Lambert v. McBride*, 365 F.3d 557, 561-62 (7th Cir. 2004) ("Essentially, [*Ring*] is an application, perhaps more accurately an extension, of the rule announced earlier in *Apprendi* . . . Because the rule in *Apprendi* is not retroactive, . . . it stands to follow that the rule in *Ring*, an *Apprendi* child, is not retroactive for the same reasons. Two circuits, the Tenth and Eleventh, have expressly held that *Ring* is not retroactive to cases on collateral review. *See Cannon v. Mullin*, 297 F.3d 989 (10th Cir. 2002), and *Turner v. Crosby*, 339 F.3d 1247 (11th Cir. 2003) [*cert. denied*, 124 S. Ct. 2104 (2004)]. These decisions make the convincing case that first *Apprendi*, and then *Ring*, only established new rules of criminal procedure. They did not involve substantive changes in the law."); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (holding *Blakely* not retroactive for purposes of authorizing successive *habeas* petitions, and noting that Justice O'Connor's dissent in *Blakely* recognized that *Schriro* held "'that *Ring* (and *a fortiori Apprendi*) does not apply retroactively on *habeas* review'").

788 (2nd Cir. 2001) ("the record does not give this Court 'reason to think' that a 'rational defendant would want to appeal,' because Sarroca did not raise any nonfrivolous argument in his appeal to this Court."); *compare Lewis v. Johnson*, 359 F.3d 646, 661 (3rd Cir. 2004) (contemporaneous evidence that defendant attempted to timely challenge his conviction and he raised nonfrivolous points that he wanted to raise on appeal); *Valletto*, 195 F. Supp. 2d at 647 (defendant's "manifest belief in innocence and his persistent attempts to challenge the proceedings against him, combined with the near certainty of nonfrivolous grounds for Petitioner's appeal, satisfy this requirement [in addition to] total absence of reasons why Petitioner, had he been informed of his rights and consulted about his wishes, would not have appealed.").

**WHEREFORE, IT IS HEREBY RECOMMENDED** that Defendant's § 2255 petition be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

*Lourdes A. Martinez*
**LOURDES A. MARTINEZ**
**UNITED STATES MAGISTRATE JUDGE**